UNITED STATES of America

v.

Frederick W. KLOSTERMAN, John R. Deeney, Jr., Joseph A. Stafford.

UNITED STATES of America

v.

John R. DEENEY, Jr.

Cr. Nos. 18684, 18659.

United States District Court
E. D. Pennsylvania.

Jan. 2, 1957.

W. Wilson White, U. S. Atty., Robert J. Spiegel, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

William A. Gray and Lester J. Schaffer, Philadelphia, Pa., for Frederick W. Klosterman.

Angelo D. Malandra, Camden. N. J., for Deeney and Stafford.

KRAFT, District Judge.

The defendants, Klosterman, Deeney and Stafford, were jointly indicted in one indictment of two counts. The first count charged conspiracy,[1] in this and other judicial districts, (a) to defraud the United States, (b) to commit the offense of bribery[2] against the United States. Of the three overt acts described in this count, only one, by Klosterman, was alleged in this judicial district. The second count of the indictment charged bribery of one King, a Special Agent of the Intelligence Division of the Internal Revenue Service.

Defendant Deeney was also separately indicted for conspiracy,[3] in this and other judicial districts, to defraud the United States as an employee of the United States acting in connection with the revenue laws. This indictment, which alleged the same overt acts as the first count of the other indictment, named but did not indict Klosterman and Stafford as Deeney's fellow conspirators.

At the close of the Government's case the defendants' motions for judgment of acquittal were denied. Each defendant closed without offering evidence and moved again for judgment of acquittal. The court reserved decision on the latter motions and submitted the case to the jury which acquitted Klosterman of conspiracy but, otherwise, found all the defendants guilty of the charges against them. Timely renewals of the motions were made including, in the alternative, motions for new trial.

### Conspiracy.

In support of their motions for judgment of acquittal upon the conspiracy counts on which they were respectively found guilty, Deeney and Stafford contend that this court is without jurisdiction, under the evidence, because the conspiracy was not formed nor was any act to effect its object done in this judicial district.

18 U.S.C. § 371 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined \* \* \*."

Passing for later consideration the asserted defense of entrapment, there

1. 18 U.S.C. § 371.
2. 18 U.S.C. § 201.
3. 26 U.S.C. § 7214(a) (4).

was sufficient evidence from which the jury could find that the three defendants had conspired as charged and that the payment of the bribe to King by Klosterman was an act done in this district by one of the conspirators to effect the conspiracy's object. Under these circumstances a grant of defendants' motions on the jurisdictional ground at the close of the evidence would have been improper.

■ Though the jury, by its verdict of guilty on the substantive bribery count, determined that Klosterman committed the act of bribery in this district, it nevertheless acquitted him of conspiracy. The defendants, conceding that inconsistency in a verdict, per se, affords them no legal basis for relief, urge that this verdict was so patently inconsistent as to impel a court to grant a new trial in the interest of justice. We reject the premise of inconsistency. The indictment charged that Klosterman, Deeney and Stafford were all conspirators and the Government by its evidence tried so to convince the jury. The jury was not obliged to accept or reject, in toto, the Government's theory. From the evidence the jury was warranted in concluding that the actual conspiracy was between Deeney and Stafford, whose prime motive was to procure for themselves a substantial cash payment from Klosterman as a reward for the successful solution of his tax problems by the bribery of King.

■ The statute explicitly requires the overt act to be done by one or more of the conspirators. Klosterman's acquittal of conspiracy determined that the only alleged overt act done in this district was done by one who was not a conspirator. All other evidence related to events in the State of New Jersey. Since it is now resolved that only Deeney and Stafford were the conspirators and that they neither conspired nor did any overt act within this district their prosecution in this district upon the conspiracy counts cannot be sustained.[4]

### Bribery.

The motions of Deeney and Stafford for judgment of acquittal upon the bribery count are founded essentially upon the contentions that (1) this court lacked jurisdiction because they committed no act within this district, (2) the evidence obliged the court to determine, as a matter of law, that the defense of entrapment was established. Klosterman's motion rests on the latter contention alone.

Klosterman concedes that, except for his defense of entrapment, the evidence establishes his guilt of bribery. The bribery occurred in the Hotel Bartram, Philadelphia. Neither Deeney nor Stafford was present when Klosterman paid the $5,000 bribe to King. No evidence established the presence of either in this district before, at or after the bribe was paid. The evidence showed only that they were in New Jersey and that whatever they did was done there.

Jurisdiction of this court must rest, therefore, on 18 U.S.C. § 2(a)[5] and Rule 18, Federal Rules of Criminal Procedure;[6] otherwise it is lacking.

The evidence disclosed that on October 19, 1955, Deeney, at King's request, brought Stafford to meet King in Camden, N. J., intending that, if King showed willingness, Stafford should then make arrangements for later payment of a bribe by Klosterman to King. Stafford made such arrangements. Since King and Klosterman never discussed a

---

4. Rule 18, Federal Rules of Criminal Procedure, 18 U.S.C. provides:
"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, * * *."

5. As amended Oct. 31, 1951, this provides:
"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

6. Footnote 4, supra.

meeting at the Bartram Hotel or a bribe, Klosterman's appearance at the appointed time and place and his payment to King of the initial installment of the bribe in exact conformity with Stafford's arrangements makes inescapable the inference that Stafford, directly or through an intermediary, promptly communicated to Klosterman all the details of the proposed meeting and bribe. Equally inescapable is the inference that Klosterman, directly or through Stafford or another intermediary, promptly apprised Deeney of his. acceptance of Stafford's proposals, since Deeney informed King on the morning of October 21, 1955 that the bribe would be paid according to plan. Without these preliminaries the bribe payment at the meeting in Philadelphia would not have occurred. This was sufficient to support a jury finding that Deeney and Stafford did aid, abet, counsel, induce or procure the commission, in this district, of the offense of bribery by Klosterman.

██ Communication between accessory and principal may be through an intermediary and it is unnecessary that the identity of the accessory be known to the principal: United States v. Pritchard, D.C. 55 F.Supp. 201.[7] "Aiding, abetting and counselling" is a rule of criminal responsibility for acts which one assists another to perform and makes a defendant a principal when he consciously shares in any criminal act, whether or not there is a conspiracy, and, if a conspiracy is also charged, it is immaterial so far as aiding, abetting and counselling are concerned, whether or not the substantive offense is done pursuant to the conspiracy: Nye & Nissen v. United States, 1949, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919.

██ Construed together, 18 U.S.C. § 2(a) and Rule 18 authorize prosecution in the district where the substantive offense is committed of those who aid, abet, counsel, induce or procure its commission. This supplements rather. than supersedes the common law rule, under which an accessory was triable only in the district where the accessorial acts were done, by providing additional venue. United States v. Gillette, 2 Cir., 1951, 189 F.2d 449;[8] Eley v. United States, 6 Cir., 1941, 117 F.2d 526. This court, therefore, was not without jurisdiction of the bribery charge.

The defendants next contend that the court should have determined, as a matter of law, that the defense of entrapment was established by the evidence. No complaint is made of the adequacy or fairness of the instructions to the jury on entrapment, but it is insisted that that issue should not have been submitted to the jury.

██ The boundary between the areas of permissive law enforcement and forbidden entrapment is delineated in the leading case of Sorrells v. United States, 287 U.S. 435, at pages 441, 442, 53 S.Ct. 210, at page 212, 77 L.Ed. 413:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, *is to reveal the criminal design;* to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus *to disclose the*

7. See Morei v. United States, 6 Cir., 1942, 127 F.2d 827.

8. certiorari denied 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625, rehearing denied 342 U.S. 879, 72 S.Ct. 164, 96 L.Ed. 661, rehearing denied 345 U.S. 945, 73 S.Ct. 827, 97 L.Ed. 1370.

*would-be violators of the law.* A different question is presented when the criminal design originates with the officials of the government, and *they implant in the mind of an innocent person the disposition to commit the alleged offense* and induce its commission in order that they may prosecute." (Emphasis supplied.)

The Court of Appeals for the Third Circuit has reviewed the application of this standard in United States v. Brandenburg, 162 F.2d 980; United States v. Roett, 3 Cir., 172 F.2d 379; United States v. Sawyer, 210 F.2d 169; United States v. Moses, 220 F.2d 166. In the Moses case the court, 220 F.2d at page 169, said:

"While this disposes of the present appeal, we think that, for the guidance of the district courts in the future, we should comment upon the appellant's exception to the refusal of the district judge, who tried this case without a jury, to consider a defense of entrapment. This point too was involved in the Sawyer case. There we stated the basic test of entrapment, whether the criminal design was created by the conduct of public officers, or whether the officers merely created an opportunity which a person already disposed to commit the crime sought to exploit. In cases like the present one the admitted fact that public officers proposed and solicited the criminal act is not even offset by an indication that the person solicited had recently engaged in similar criminality. *While other facts may prevent such a situation from amounting to entrapment as a matter of law,* cases like this will almost always present a substantial question of fact on the entrapment issue which must be considered and resolved like any other question of fact." (Emphasis supplied.)

The evidence before this jury was wholly adequate to sustain a finding that the criminal design was first revealed by Deeney to King without solicitation by the latter, and that this criminal design originated with Deeney or with Deeney and Stafford. Defendants strongly urge that the evidence establishes as fact that Deeney promptly abandoned his criminal design when King appeared unreceptive to his proposal and that thereafter the same criminal design was re-created by King at the instance of his superiors. To hold as a matter of law that Deeney's oral manifestation of withdrawal to King was bona fide, rather than a mere pretense upon finding King initially unresponsive, would necessitate a complete disregard of the recording of Deeney's conversation [9] at his later meeting with King which, from Deeney's tone of voice, his language and its import, was sufficient to permit the jury to find that Deeney still had his criminal design, was quite anxious to pursue it and expected thereby to profit materially from Klosterman, had analyzed carefully some of the problems involved in its consummation, had arrived at and suggested to King tentative solutions—in short, that Deeney's criminal design was dormant but unchanged during the interim. Applying the test of the Sorrells case, the criminal design originated with Deeney or with Deeney and Stafford and not with the officers of the Government. It could scarcely be said, as a matter of law, that the disposition to commit this offense was implanted by public officers in Deeney's mind or that the latter's mind was that of an innocent person. Unlike the factual situation in the Moses case, the first solicitation and proposal here was not by the public officers but by Deeney. If King's subsequent approach to Deeney be construed as solicitation by King, that approach clearly related to Deeney's revealed disposition to commit the crime. If creation of opportunity, artifice and stratagem may properly be employed, under the Sorrells case, to re-

9. Government Exhibit G–6.

veal an existing but undisclosed criminal design, they may be employed with more reason to expose the continued existence of a criminal design already revealed.

Deeney's quick acquiescence in King's request of October 19 to meet the insurance man, of whom Deeney had previously spoken, and the prompt, joint appearance of Deeney and Stafford for the requested meeting were relevant circumstances. There was no evidence to show that Deeney's purported abandonment of the criminal design was ever communicated to Stafford, or that the latter had ever abandoned whatever design he had. Moreover, Stafford's ready response to King's request for a meeting, his complete familiarity with the scheme, his ability and readiness to discuss and decide upon details essential to the commission of the proposed crime, his desire for and expectation of substantial personal gain therefrom, and his communication to Klosterman, directly or indirectly, of the arrangements made by him for the bribe payment were enough, with all the attendant circumstances, to enable the jury to conclude that Stafford was a participant with Deeney in the original criminal design, had never abandoned it and was, indeed, no innocent person in whose mind the disposition to commit the crime had been implanted by public officers.

Klosterman and King had no direct communication. The commission of bribery by Klosterman resulted either from proposals by Stafford and Deeney or their intermediaries, or from his own disposition to bribe or from both. There was no direct evidence that Deeney and Stafford communicated with Klosterman. The clear inferences of communication, directly or indirectly, between Klosterman and Stafford and between Klosterman and Deeney arose from Klosterman's appearance at the Hotel Bartram at the appointed time, his complete knowledge of the arrangements effected by Stafford with King and his payment of the bribe in conformity therewith and with Deeney's assurance to King that same day.

If Klosterman's crime resulted from his own disposition to commit it when an opportunity was afforded, or if it resulted from proposals by Deeney or Stafford or both, acting in pursuance of a criminal design of their own, there could be no entrapment. Klosterman's defense of entrapment must rest necessarily upon prior entrapment of Deeney or Stafford or both and reliance by Klosterman upon the entrapping solicitations of Government officers communicated to him by Deeney or Stafford. There was no evidence to show upon what Klosterman relied, or whether any alleged solicitation by King was ever communicated to or known by him. Under this state of the evidence a substantial question of fact on the entrapment issue was presented which required its submission to the jury.

Among the reasons assigned by all the defendants in support of their motions for a new trial was the admission in evidence of Exhibit G–6. This exhibit was the wire recording of a conversation between King and the defendant, Deeney, relating to the bribery scheme. The recording was obtained by use of a device concealed, for that purpose, on King's person. Deeney was unaware that King was so equipped or that their conversation was being recorded. Since this conversation was being simultaneously recorded in the mind of King, whose recollection thereof was evidential, it would be illogical to hold that a recording of that conversation, which would be apt to be more accurate and complete than King's human recollection, should be excluded because Deeney had no knowledge that an electronic device was recording the same conversation heard by King. In light of the greater probabilities of accuracy and completeness of the recording, a defendant may as well be helped as harmed by such recording, depending upon the content and language of the entire conversation. Its weight was for the jury. The exhibit was clearly admissible under On Lee v. United States, 1952, 343 U.S. 747, 72 S.

Ct. 967, 96 L.Ed. 1270; Goldman v. United States, 1942, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; United States v. Schanerman, 3 Cir., 1945, 150 F.2d 941.

The defendant Klosterman assigns, as a further reason for new trial, the refusal of the trial judge to affirm his 9th request for charge which read as follows: "Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt there must be an acquittal." This request was contrary to Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 137, 99 L.Ed. 150, in which the court said:

"The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, * * * but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, * * *.

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

The remaining reasons assigned in support of defendants' motions for new trial are either not pressed or without sufficient merit to require consideration.

Accordingly, prior to February 1, 1957, the United States Attorney will submit, upon Criminal No. 18684, a form of order denying the defendants' motions for judgment of acquittal and for new trial on Count II thereof, and counsel for Deeney and Stafford will submit forms of orders granting their motions for judgment of acquittal on Count I thereof and the like motion of Deeney upon Criminal No. 18659.