**UNITED STATES of America, Plaintiff,**

v.

**Spencer McKinley JAMES,
Jr., Defendant.**

**Crim. No. 77–00011–D.**

United States District Court,
W. D. Oklahoma.

Feb. 3, 1977.

David L. Russell, U. S. Atty., by Susie Pritchett, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Raymond Burger, Gary F. Duckworth, Oklahoma City, for defendant.

## ORDER

DAUGHERTY, Chief Judge.

Defendant is charged in a four count Indictment with receiving a *firearm* which had been *shipped* in *interstate* commerce *after having been convicted of a crime* punishable by imprisonment for a term exceeding one year under Title 18 U.S.C. § 922(h); *possession of illegal weapons*, a High Standard, 20 gauge, *sawed off shotgun* and a *destructive device*, under Title 26 U.S.C. 5861(d); and making a *threat through an instrument of commerce to damage or destroy real or personal property* under Title 18 U.S.C. § 844(e). Defendant has moved to suppress all evidence obtained from his automobile alleging the evidence was obtained through an illegal search and seizure as well as the exclusion of a tape recording made of the Defendant's voice during an interview with Federal law enforcement agents alleging it was obtained by an illegal seizure and violated Defendant's privilege against self–incrimination and his rights to counsel and due process. The Plaintiff opposes the Motion. An evidentiary hearing has been conducted by the Court. The Court finds and concludes that the evidence obtained from the automobile was legally seized and the tape recording was lawfully made. All evidence sought to be suppressed is admissible in evidence in the forthcoming trial and the Motion under consideration should therefore be overruled.

The evidence presented at the hearing established the following facts. At approximately 11:27 A.M. on December 23, 1976, at Stillwater, Oklahoma, a dispatcher on an emergency line at the Stillwater Police Department received a phone call. The caller stated that a bomb was to go off in a few minutes and demanded that all jail prisoners be released. The caller also stated another bomb was set to go off. Two simultaneous tape recordings were automatically made of the threatening telephone call. The "call back" recorder had been installed for short term use by a dispatcher to permit an immediate check of emergency information received. The equipment consisted of a temporary tape on a continuous belt which would be erased by being recorded over after a period of approximately two hours of recordings. The original recording of the bomb threat recorded on the temporary tape is no longer in existence. The second recording made at the same time as the temporary tape is a permanent recording normally retained for reference for ninety days. The second tape of the bomb threat call was secured by and remains in the custody of the Stillwater Police Department. At the same time the recording was being made, the telephone equipment automatically held open the line upon which the bomb threat call was received. Thereafter the dispatcher kept the line open as the line could only be released and closed by the dispatcher. Immediately the dispatcher informed the desk sergeant of the call and played back the tape for him. In turn the sergeant informed other officers of the call and called the telephone company switchman to request a trace of the phone call. The switchman completed the trace and informed the police the call had originated from a pay telephone located at 1106 South Main Street in Stillwater, Oklahoma.

A bomb exploded near the police station minutes after the bomb threat call was received. Police Sergeant Waren arrived at the police station at approximately 11:35 A.M. and was informed of both the call and the explosion and was dispatched to the phone booth located at 11th and Main. When he arrived, he found the booth unoccupied. He questioned an employee of an automotive garage next to the phone booth learning that at about 11:30 A.M. a black male in his early twenties, approximately 5'10" tall and of slender build, wearing a light colored jacket, came out of the phone booth and went around the corner of the building heading toward Imo's Garage. The witness had seen no one else use the phone booth that morning. Sgt. Waren immediately went to Imo's Garage or body shop and questioned an employee who related having seen at approximately 11:30 a black male park a 1974, white on blue Buick with damage to the left rear quarter panel and bumper. He watched the person park the car across the street and then walk by the garage heading in the direction of the automotive garage. Sgt. Waren immediately radioed the description of the suspect and the car to all law enforcement units in the area.

State Highway Patrolman Robert Glandon and his partner received a phone call at approximately 11:50 A.M. informing them of the explosion, the threat of another bomb and requesting their assistance. Patrolman Glandon received Sgt. Waren's radio description of the suspect and his car. Moments later, both Patrolman Glandon and Sgt. Waren received a radio message from a County Sheriff's unit giving the location of a car fitting the description radioed to all units by Sgt. Waren. After receiving this information, Patrolman Glandon spotted a vehicle matching the description given and observed the vehicle was being driven by a black male on a four lane highway. As the patrolman tried to get through the traffic to get behind the Buick, the Buick's driver signaled to turn for several blocks and switched lanes several times. Patrolman Glandon got behind the Buick as it turned left in the middle of the block toward a private driveway. The drive was blocked. The driver stopped in the street blocking the oncoming traffic as the patrolman turned on his overhead lights. Sgt. Waren and other law enforcement officers arrived immediately on the scene. The driver and his vehicle fit the descriptions provided to and broadcast by Sgt. Waren. As the Defendant was being arrested, Sgt. Waren began searching the interior of the car. Patrolman Glandon asked Sgt. Waren to get the keys and go through the car for explosive devices because he believed the second bomb mentioned in the bomb threat call might be in the car. He believed failure to search or to delay the search for procuring a warrant would be too dangerous as the car was located in traffic and the area was well populated. As Sgt. Waren opened the trunk, he and Patrolman Glandon saw a shotgun lying inside. Patrolman Glandon picked up the gun and found it to be loaded. After searching the car and finding no explosive devices, the car was towed to the police impoundment lot. Sgt. Waren followed the car to the lot and took a property inventory of all its contents and seized several items as evidence. Patrolman Glandon arrived and seized the shotgun.

Several hours after the arrest, the Defendant was interviewed by Agents of the Bureau of Alcohol, Tobacco, and Firearms. Prior to the interview, an agent read the statement of rights to the Defendant verbatim from the Bureau's form entitled "Waiver of Right to Remain Silent and of Right to Advise of Counsel". The form was given to the Defendant and he was asked to read it. The Defendant appeared to read the form before signing it. Special Agent Robert Valadez placed a tape recorder on the table in front of the Defendant, placed a tape cartridge in the recorder, and began to tape the interview. The agents again read the Defendant his *Miranda* rights and the Defendant acknowledged his understanding and waiver. During the interview, the Agents questioned the Defendant about his activities during the day. The Defendant did not admit to the bomb threat call or to

having any knowledge of a bomb. Near the end of the interview, the Agents asked the Defendant to read a written passage. This passage was transcribed from and consisted of the words spoken by the caller when he made the bomb threat. The Defendant read the statement twice. The agents then asked the Defendant to read the statement into a telephone and the Defendant refused. The agents stopped the interview.

Following the termination of the interview, Special Agent Valadez tape-recorded the bomb threat call as it was being played back on the permanent tape retained by the Stillwater Police Department. Both Sgt. Langley and Agent Valadez stated the copy made was a duplicate of the original tape. Agent Valadez took the duplicate tape he had recorded plus the tape recording of the interview of the Defendant to the ATF Forensic Laboratory located in Washington D. C. for a voice comparison analysis. A report was made of the analysis.

Defendant contended that the evidence obtained from the search of his vehicle should be suppressed because it was obtained incident to a warrantless, illegal arrest; and that, even if the arrest were legal, any evidence obtained from the trunk should be suppressed because the search was outside the area within the Defendant's immediate control. Defendant further contended that the tape recording made by ATF agents during his interview should be suppressed because the Defendant was not told that a purpose of the interview was to obtain a voice exemplar for comparison with the recorded bomb threat.

■■■■ A warrantless arrest is lawful and a search incident to the arrest is reasonable under the Fourth Amendment to the Constitution where the arresting officers have probable cause to believe the Defendant is committing or has committed a felony. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable Cause exists when the officers have either direct knowledge of facts or information from reasonably trustworthy sources which would warrant a prudent man to believe the person

arrested has committed an offense. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Gardner*, 480 F.2d 929, (10th Cir. 1973); *United States v. Troutman*, 458 F.2d 217, (10th Cir. 1971); *Bird v. State*, 507 P.2d 545 (Okla.1973).

■■■■ The arresting officers, either directly as in the instance of Sgt. Waren or from other law enforcement officers, had knowledge of a bomb threat call of more than one bomb, knew of the explosion of a bomb, and were in possession of corroborating descriptions given by bystanders of a person using the traced phone at the time of the call as well as a description of the car he was driving. All of the information was less than thirty minutes old when the officers spotted the defendant whose car and person fit the description. In addition, the arresting patrolman observed the Defendant commit a traffic violation immediately prior to stopping and arresting him.

As probable cause existed for the arrest of the Defendant, there was no need to secure an arrest warrant, nor was it practical to do so, in view of the rapidly developing investigation and the facts indicating a second crime similar in nature to the one already committed might be committed momentarily.

*Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and its progeny clearly justify warrantless searches of automobiles incident to a lawful arrest where there is probable cause to believe there is evidence of crimes. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. One 1957 Ford Ranchero Pick-up Truck*, 265 F.2d 21 (10th Cir. 1959). Such searches can validly extend to the trunk of the automobile. *Wood v. Crouse*, 436 F.2d 1077 (10th Cir. 1971); *United States v. Roe*, 495 F.2d 600 (10th Cir. 1974). Thus any evidence seized in a search of Defendant's automobile was obtained lawfully. There was no need to obtain a search warrant. In

addition to the exigent circumstances present because of the mobile nature of the automobile, the facts known to the officers at the time of the probable existence of a second bomb presented further justification for an immediate search. Moreover, the property inventory of the contents of the car after its impoundment pursuant to standard policy and procedures of the Stillwater Police Department did not involve an unreasonable search. *South Dakota v. Opperman*, 96 S.Ct. 3092, 428 U.S. 364, 49 L.Ed.2d 1000 (1976); *United States v. Roe, supra; Bennett v. State*, 507 P.2d 1252 (Okl.Crim. App.1973).

The Defendant did not seek to suppress the tape recording of the bomb threat call made to the Stillwater Police Department but sought only to suppress the tape recording of the interview which was later used as an exemplar for comparison purposes.

■ A tape recording of a conversation between an accused and another may be admissible in evidence against the accused. *Osborn v. United States*, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); *United States v. Quintanta*, 457 F.2d 874, (10th Cir. 1972), cert. den. 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130. Tapes of an accused's conversation with law enforcement officers, voluntarily made, may also be admissible. *Allen v. United States*, 333 F.2d 679 (1st Cir. 1964), cert. den. 379 U.S. 841, 85 S.Ct. 79, 13 L.Ed.2d 47. Even if the recording was made without the accused's knowledge, it may be admissible. *United States v. Klosterman*, 147 F.Supp. 843 (E.D.Penn. 1957). Courts have recognized that requiring a Defendant to give a demonstration of his voice for identification purposes by speaking the exact words spoken at the commission of a crime is not violative of his privilege against self incrimination. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *State v. Freeman*, 195 Kan. 561, 408 P.2d 612 (1965) cert. den. 384 U.S. 1025, 86 S.Ct. 1981, 16 L.Ed.2d 1030; *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1972); *United States v. Raymond*, 337 F.Supp. 641 (D.C. Cir.1972); *United States v. Askins*, 351

F.Supp. 408 (D.Md.1972). Nor do required voice exemplars violate the prohibition against unreasonable search and seizure. *In re Dini*, 322 F.Supp. 393 (N.D.Ill.1971). Claims that a person's right to equal protection of the laws has been violated by requiring a person to speak in a line up for voice identification have been rejected. *Gilbert v. United States*, 366 F.2d 923 (9th Cir. 1966), cert. den. 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370; *Stiltner v. Rhay*, 371 F.2d 420, (9th Cir. 1967), cert. den. 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977. However, an accused does have the right to counsel when he is required to demonstrate his voice for purposes of identification. *United States v. Wade, supra.*

■ In this case, the Defendant was fully advised of his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and voluntarily waived those rights, including the right to counsel, and consented to the interview with Federal Agents. The Defendant knew the interview was being taped. He knew he could stop the interview at any time and consult with or have an attorney present. He knew that what he said on tape could be used against him. Defendant was not denied his right to counsel.

In view of the foregoing findings and conclusions, the Motion of Defendant to suppress items of evidence seized from his vehicle and the tape recording made of his interview with Federal Agents should be overruled and said evidence admitted at the forthcoming jury trial herein.