UNITED STATES of America,
Plaintiff-Appellee,
v.
Rex Edward DARLAND,
Defendant-Appellant.

No. 80–9069
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 15, 1981.

Certiorari Denied Jan. 11, 1982.
See 102 S.Ct. 1032.

Michael E. McMaken, Mobile, Ala. (Court-appointed) for defendant-appellant.

W. A. Kimbrough, U. S. Atty., William R. Favre, Jr., Thomas H. Figures, Asst. U. S. Attys., Mobile, Ala., for plaintiff-appellee.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before HILL, VANCE and HATCHETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Darland challenges the sufficiency and admissibility of much of the evidence which led to his bank robbery conviction.[1] A review of the trial record convinces us that his conviction must be affirmed.

Late in the morning of October 22, 1979, two men wearing "Halloween masks, gorilla-looking things," gloves, socks over their shoes, faded blue jeans and jackets robbed the Fulton, Alabama branch of the Bank of Thomasville. One man wielded a pistol; the other had a shock of blond hair "sticking out" from under his mask. A local county sheriff investigated the robbery. An automobile matching the description of the getaway vehicle was found about a mile from the bank, abandoned in the woods at the end of a dirt road; the automobile was registered in Darland's name. Bloodhounds picked up a trail from the automobile, and followed it through the woods in the general direction of Grove Hill, a nearby village. The dogs lost the trail in a wet area beyond the woods.

After nightfall, the local sheriff received a number of reports (from unidentified motorists) that two persons were darting in and out of the bushes alongside the road between Grove Hill and Fulton. The sheriff decided to investigate and, at about 9:00 p.m., he spotted two men generally matching the description of the bank robbers leaving a Grove Hill food store. One of the men sported a long blond ponytail. As the sheriff approached the pair, he noticed that both wore blue jeans which were wet below the knees and shirts which were soiled and pulled. He recognized one of the men as "the Garrick boy." The other man identified himself as Darland. The sheriff told Darland that he had been "looking for you

all day" because the "tag" attached to the car involved in the robbery "had been issued in his name." Darland apparently insisted that he had sold the car and knew nothing about the robbery. Record, Vol. 3 at 60, 67. The two men were taken to the sheriff's department where they were informed of their *Miranda*[2] rights and questioned. Garrick, apparently following the advice of his attorney, answered questions implicating Darland. Later, Garrick led the police to the stolen money and the implements used in the crime.

Both Garrick and Darland were indicted. Garrick pled guilty and was sentenced under provisions of the Youth Corrections Act. He testified against Darland at the latter's trial, detailing the plans for, the commission of, and the attempted escape from the crime.[3] *Id.* at 115, 121–26. Garrick admitted that he cooperated with the police and the prosecution because they told him he would receive a shorter sentence. *Id.* at 128. Darland did not testify at his own trial; his four witnesses testified that he had spent the night and early morning before the robbery with them.

## I.

Darland contests first the admissibility of his statements to the sheriff that he sold the car and knew nothing about the robbery. He claims both that the statements were the fruit of an illegal arrest and that they were admitted without the proper predicate. Citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), he insists that it was illegal for the sheriff to seize him at the food store in Grove Hill. In *Dunaway* the Supreme Court held that the police violated Dunaway's fourth and fourteenth amendments rights when they picked him up and took him to the police station for interrogation even though nothing but an unsubstantiat-

---

1. 18 U.S.C. § 2113(a) proscribes bank robbery and incidental crimes.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Garrick also testified that a third person, Neal Garrick, was involved in the preparation for the crime. The two Garricks are apparently related in some way. The sheriff explained that he "never made the arrest of Neal Garrick" because he "didn't have enough evidence to bring him to trial . . . ." Record, Vol. 3, at 80.

ed tip from a jailed inmate implicated him. Darland's case is significantly different. The sheriff's suspicions that Darland and Garrick had been involved in the bank robbery were reasonable enough to justify the initial questioning. *United States v. Berry*, 636 F.2d 1075 (5th Cir. 1981); *United States v. Hall*, 557 F.2d 1114 (5th Cir.), *cert. denied* 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 195 (1977). When Darland identified himself, thereby providing a link with the apparent getaway vehicle, those reasonable suspicions sufficiently ripened into probable cause to detain him and take him into custody. *United States v. Ashcraft*, 607 F.2d 1167 (5th Cir. 1979), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2944, 64 L.Ed.2d 826 (1980). After his arrest, Darland was properly apprised of the *Miranda* litany. There was nothing illegal about the sheriff's questioning, and Darland's response to that questioning was proper evidence.

## II.

Next, Darland challenges certain testimony of the sheriff concerning the lack of fingerprints on the car. During cross-examination by Darland's attorney, the sheriff admitted that as far as he knew no fingerprints had been found. On redirect, the sheriff was allowed to explain why, in his opinion, no fingerprints were found. Darland objected, insisting that the sheriff was not qualified to testify about fingerprinting procedures and that, in any event, such questions were beyond the scope of proper examination.

■ Darland's objections have little merit. Because Darland himself raised the issue of fingerprints, he cannot object to the elicitation of some retort. It is true that the sheriff was not shown to be an expert in fingerprinting, but he was an experienced law enforcement officer and his answers required no particular expertise. The testimony was admissible under the lay

opinion rule, Federal Rule of Evidence 701. The trial court did not abuse its discretion in admitting this evidence. *United States v. Ylda*, 643 F.2d 348 (5th Cir. 1981).

■ Darland also objects to the admission of evidence concerning the registration of the apparent getaway vehicle, maintaining that because the sheriff himself had not traced the registration of the vehicle, any testimony by him concerning it was hearsay. This objection too has little merit. It is clear that the vehicle's registration was traced via standard law enforcement methods; it formed part of the collective knowledge of the investigating police. As such, it carries a strong indicia of reliability. *United States v. Allison*, 616 F.2d 779 (5th Cir.), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980).

■ Darland's hearsay objection to the vague reports concerning the shadowy pair on the road between Fulton and Grove Hill is also meritless. It is clear from the transcript that no attempt was made to prove that two people were on (and off) the road that night; rather, the evidence served only to explain in part why the sheriff conducted his investigation in the way he did. Again, it was within the discretion of the trial court to admit such evidence. We note that the trial judge cautiously instructed the jury about the purpose of the testimony. Record, Vol. 3, at 50.

## III.

■ Finally, Darland argues that we should reverse his conviction because the case against him depended significantly upon the uncorroborated testimony of his accomplice, Garrick. He cites Alabama law,[4] a decision in which this court discussed the untrustworthiness of uncorroborated accomplice testimony,[5] and two turn-of-the-century Supreme Court cases, *Holmgren v. United States*, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861 (1909) and *Caminetti v.*

---

4. Ala.Code § 12–21–222 (1975) prohibits a conviction based on the uncorroborated testimony of an accomplice.

5. *United States v. Beasley*, 519 F.2d 233 (5th Cir. 1975), *vacated on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

*United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). We note that Darland raised the same argument in an earlier appeal. *United States v. Darland*, 626 F.2d 1235, 1238 (5th Cir. 1980). Although the Alabama law has merit, federal law is to the contrary: it is firmly established in this circuit that convictions can stand upon such evidence. *United States v. Trevino*, 565 F.2d 1317, 1319 (5th Cir.), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1978). The two Supreme Court cases afford Darland little comfort; while both address concerns raised by such evidence, they do so in the context of jury instructions, not as a basis for reversal. The jury here was properly cautioned about the value of the evidence.

We find nothing to justify reversing Darland's conviction. Accordingly, it is

AFFIRMED.