Dale E. **KRAUS** and Rosetta M. Kraus, husband and wife; Cindy D. Kraus, individually; and Todd W. Montgomery, individually, Plaintiffs-Appellees,

v.

**COUNTY OF PIERCE, et al.,**
Defendants-Appellants.

No. 85–4190.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1986.

Decided July 8, 1986.

As Amended Sept. 17, 1986.

Monte E. Hester, Tacoma, Wash., for plaintiffs-appellees.

Daniel R. Hamilton, Tacoma, Wash., for defendants-appellants.

Before WRIGHT, SNEED, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

This is a 42 U.S.C. § 1983 action against several Pierce County Sheriff's Deputies and the County of Pierce for damages arising out of an allegedly unlawful seizure of the plaintiffs and search of their home. This appeal is from the district court's denial of defendants' motion for summary judgment.

Because denials of motions for summary judgment are ordinarily unappealable interlocutory orders, *see* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2715, at 636 (1983), this appeal presents a threshold question of our jurisdiction. *See* 28 U.S.C. §§ 1291, 1292. We hold, following the Supreme Court's recent decision in *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that we have limited jurisdiction to consider the defense of qualified immunity raised by the individual defendants in their motions for summary judgment. We affirm the district court's denial of summary judgment as to the claimed unlawful seizure, and reverse the district court's denial as to the claimed unreasonable search.

## FACTS

Our review of rulings on summary judgment is *de novo* and we view the facts in

the light most favorable to the nonmoving party, in this case the plaintiffs. *See, e.g., Water West, Inc. v. Entek Corp.,* 788 F.2d 627, 628–29 (9th Cir.1986).

Plaintiffs are Dale and Rosetta Kraus, their daughter Cindy Kraus, and a friend, Todd Montgomery. On the evening of September 29, 1984, the plaintiffs were in the Kraus residence watching television when Dale Kraus received a phone call from a dispatcher of the Pierce County Sheriff's Office. The dispatcher instructed Kraus to come outside the house for interrogation by awaiting officers. There is nothing in the record to indicate that any of the plaintiffs knew of any reason why any one of them could be the object of such an interrogation.

Kraus obeyed the instruction to go outside, and Montgomery followed. Upon exiting the home, the two found themselves bathed in floodlights and surrounded by at least five sheriffs' deputies, some of whom had weapons drawn. The deputies ordered Kraus and Montgomery to put their arms over their heads and drop to their knees. After some period of observation, the deputies informed the plaintiffs that neither Kraus nor Montgomery, both of whom are white males, fit the description of the robber for whom they were looking, a black male. The deputies then informed the plaintiffs that they desired to ask them some questions. At Mrs. Kraus' suggestion, the deputies conducted the questioning inside the house and eventually left the premises.

What prompted the plaintiffs' frightening confrontation with the police was a robbery earlier in the evening in which the plaintiffs were not in any way involved. An armed black male committed the robbery at a First Interstate Bank machine in the Villa Plaza shopping mall in Pierce County. The robbery occurred at approximately 8:00 p.m. on a Saturday night. Robert Kay saw the robbery and spoke to the victim just after it had occurred. Kay then chased the robber who ran into a crowded drug store parking lot some distance from the machine.

Kay then apparently lost sight of the robber, but observed a red hatchback automobile leave the parking lot at a rapid speed. He stated in his affidavit that the car "rolled through the stop signs where the parking lot enters onto Bristol Avenue and where Bristol Avenue meets 100th Street Southwest" and that it "accelerated rapidly eastbound on 100th Street." He followed the car long enough to write down the license plate number, "Kraus 2", and then reported the robbery and license number to the sheriff's office.

The sheriff's office used the information to determine the address of the owners of the car and made no further inquiries of Kay. The officers did not ask Kay whether any occupant of the vehicle looked like the robber, or why he believed the car was connected with the robbery. It immediately dispatched several deputies to the address of the car's owners, the plaintiffs Kraus.

When the deputies arrived, they saw the hatchback parked at the house and determined that its hood was still warm. The deputies decided to surround the front of the house, draw their weapons, bring the occupants out of the house, shine floodlights on them, and then interrogate them. This action was based only upon the observation that the hood of the hatchback was warm and information that the hatchback had sped away from the crowded parking lot shortly after a robbery suspect had entered the parking lot on foot.

Plaintiffs filed this civil rights action, and the defendants moved for summary judgment on various theories. All the motions were denied, and the defendants appeal, arguing that the motions should have been granted.

## JURISDICTION

As a general rule, "the denial of a Rule 56 motion is an interlocutory order from which no appeal is available until the entry of judgment following the trial on the merits." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2715, at 636 (1983); *see, e.g., Simons v. United States,* 497 F.2d 1046, 1050 (9th Cir.1974). The Supreme Court has noted, however, that qualified immunity "is an *immunity from suit* rather than a mere defense to liability...." *Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (emphasis in original). It has there-

fore held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at ——, 105 S.Ct. at 2817.

■ The motion of the deputies was based on qualified immunity and the district court's denial comes within the *Mitchell* exception to the general rule of nonappealability. The issue, however, is narrow. As the Court stated in *Mitchell*, "the appealable issue is a purely legal one, whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at ——, 105 S.Ct. at 2816 n. 9. When the complaint alleges acts constituting a plain violation of law which has a settled substantive content, the defendant is entitled to summary judgment if he makes a showing by affidavit or otherwise that he did not commit those acts and "discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.* at 2816. We thus hold that the denial of the deputies' motion for summary judgment is appealable for purposes of testing whether the defendant has demonstrated entitlement to summary judgment on grounds of qualified immunity.

■ The denial of the County's motion for summary judgment is not appealable, however. This motion was based primarily on the County's assertion that there was no policy or practice of unreasonable searches and seizures. It was not based on immunity and therefore does not fall within the *Mitchell* exception. The issues on appeal are thus limited to those raised by the deputies' motion on qualified immunity grounds.

## DISCUSSION

■ Qualified immunity is a defense to lawsuits against governmental officials arising out of the performance of their duties. Its purpose is to permit such officials conscientiously to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d

396 (1982); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). According to the test for qualified immunity established by the Supreme Court, the deputies in this case are immune from liability (and trial) if "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Plaintiffs contend that when Kraus and Montgomery left the house and were surrounded by officers with drawn weapons and floodlights, the pair was arrested, and, further, that this seizure was not supported by probable cause. The deputies assert that there was no seizure in violation of established law and that in asking Kraus to come outside they reasonably believed that they performed an investigative stop for which probable cause is not required. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry v. Ohio,* however, investigative stops were justified as "necessarily swift action predicated upon on-the-spot observations of the officer on the beat—which historically had not been, and as a practical manner could not be, subjected to the warrant procedures." Thus, a suspect may be stopped for a "limited inquiry and weapons frisk." *United States v. Beck,* 598 F.2d 497 (9th Cir.1979).

■ Investigative stops based upon suspicion short of probable cause are therefore constitutionally permissible only where the means utilized are the least intrusive reasonably available. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983).

■ Where more than a limited intrusion occurs, an arrest occurs and probable cause is required.

Because detention represents only a limited intrusion, it can be justified by a reasonable suspicion of criminal activity. However, that suspicion justifies only a brief stop and interrogation and, under proper circumstances, a brief check for

weapons. If the seizure involves anything more than the brief and narrowly defined intrusion authorized by *Terry*, it must be justified by probable cause.

*Gonzales v. City of Peoria*, 722 F.2d 468, 477 (9th Cir.1983) (citations omitted). When the line between a *Terry* stop and an arrest is crossed "depends on all of the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree and type of force or authority used to effectuate the stop." *United States v. Harrington*, 636 F.2d 1182, 1186 (9th Cir.1980). But our circuit has made it clear that where force is used such that the innocent person could reasonably have believed he was not free to go and that he was being taken into custody indefinitely, an arrest has occurred. *See, e.g., United States v. Patterson*, 648 F.2d 625, 632–34 (9th Cir.1981).

■ Applying these principles to this case, we conclude that a seizure more intrusive than an investigatory stop occurred. The officers turned spotlights on Kraus and Montgomery and confronted them with weapons at the ready. In addition, the officers' commands led Kraus and Montgomery reasonably to believe that they had no choice but to raise their arms and drop to their knees. A reasonable person in this situation would have believed that he was not free to leave and was effectively under arrest. *See, e.g., United States v. Al-Azzawy*, 784 F.2d 890, 893 (9th Cir.1985) (arrest occurred at time that officers surrounded appellee's trailer with weapons drawn, *cert. denied*, —— U.S. ——, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986); *United States v. Vasquez*, 638 F.2d 507, 522 (2d Cir.1980) (arrest occurred at time officers leveled their guns at defendants and ordered them out of their car) *cert. denied*, 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). *See also United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985); *United States v. Strickler*, 490 F.2d 378, 380 (9th Cir. 1974) ("we simply cannot equate an armed approach to a surrounded vehicle whose occupants have been commanded to raise their hands with the 'brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information' ").

Since it is well established that such a seizure is unlawful if not supported by probable cause, *see, e.g., Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963); *United States v. Jit Sun Loo*, 478 F.2d 401, 405 (9th Cir.1973), the issue is the existence of probable cause, or, more precisely, within the context of the immunity defense, whether a reasonable officer would have believed that there was probable cause to effect the seizure.

■ The information upon which the deputies acted did not amount to probable cause to believe that the occupants of the house had committed a robbery. The officers would have had probable cause to arrest Kraus and Montgomery if they had information linking them or their car to the crime scene. *See, e.g., United States v. Darland*, 659 F.2d 70, 72 (5th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982) (by identifying himself to officers, appellant provided link to getaway car necessary to give probable cause to arrest); *United States ex rel. Pella v. Reid*, 527 F.2d 380, 382 (2d Cir. 1975) (lack of evidence linking petitioner's car to the crime is fatal to a finding of probable cause to arrest). The only information available to the deputies was that Kraus' car had rapidly exited a crowded parking lot near the robbery shortly after the robbery suspect had entered the parking lot on foot. This information was insufficient to link the car or its occupants to the robbery itself or to its scene.

The cases upon which the deputies rely contain such a link and therefore do not support the defendants' contention that there was probable cause in the circumstances of this case. All of these cases involved a valid arrest of the driver of a vehicle directly connected either to the crime or its scene. For example, in *United States v. Troutman*, 458 F.2d 217 (10th Cir.1972), the vehicle was the only car in sight after a robbery at three o'clock in the morning in a small town. *Id.* at 218. By contrast, the car in this case emerged from a crowded parking lot. It was by no means the only car in sight. The vehicle in *Hamilton v. North Carolina*, 260 F.Supp. 632 (E.D.N.C.1966), *aff'd*, 382 F.2d 296 (4th Cir. 1967), had been seen at the site of the robbery, *id.* at 633, not at a parking lot some distance from the crime scene. *See also Chambers v. Maroney*, 399 U.S. 42, 90

S.Ct. 1975, 26 L.Ed.2d 419 (1970) (vehicle seen circling block in vicinity of service station that was later robbed and seen speeding away at time of robbery; description of individuals in car matched that of robbers given by victim); *Scearce v. Field*, 292 F.Supp. 807 (C.D.Cal.1968) (vehicle seen at scene of robbery at time burglar alarm went off, and leaving scene immediately thereafter). In *United States v. James*, 496 F.Supp. 284 (W.D.Okla.1977), the police obtained a description of the vehicle by describing the suspect to a parking lot attendant who said he saw the suspect park that vehicle. An employee of a garage had told the police that the suspect was the only individual to use the pay phone to which the incriminating call had been traced. *Id.* at 286. The deputies did not have such particularized information in the instant case. Thus, in each of the cases cited by the deputies, the link between the vehicle and the crime, or the occupant of the vehicle and the crime, was far more substantial than in the case at bar.

We therefore hold that, viewing the facts in the light most favorable to the plaintiffs, a reasonable officer would not have believed he had probable cause to effect this seizure of Kraus and Montgomery, and the officers reasonably should have known that their conduct violated clearly established constitutional rights. The district court properly declined to grant the officers' motion for summary judgment as to the illegal arrest claim.

█ The remaining issue in this case relates to the alleged search of the house which followed the confrontation outside. The relevant facts are not in dispute. Both parties' affidavits reveal that after realizing their mistake, the deputies explained the situation to the plaintiffs, indicated that they wished to ask some further questions, and then proceeded into the house at Mrs. Kraus' suggestion. Thus, there is no question that the deputies entered the house only upon the consent of someone with authority to permit entry. *Cf. Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk cannot validly consent to search of guest's room). Once in the house, the deputies were free to observe everything in plain view. *See generally Coolidge v. New Hampshire*, 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–

41, 29 L.Ed.2d 564 (1971) (discussing circumstances under which police may *seize* objects in plain view from place where they have a right to be). The plaintiffs' affidavits do not reveal that anything more occurred. Specifically, there is no allegation that the deputies rifled through any of the Kraus' possessions or opened any doors, drawers, or cabinets. Thus, even after viewing the facts in the light most favorable to the plaintiffs, we hold that the deputies did not violate any right of which a reasonable officer could have known. The district court erred in declining to grant summary judgment as to the illegal search claim.

Reversed in part, affirmed in part; each side to bear its own costs.