892 F.2d 1045
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Wade E. BLACKSMITH, Plaintiff-Appellee,
v.
COUNTY OF SIERRA, et al., Defendant,
and
Derrick Greenwood; Joseph G. Moseley; Steven J. Peterson,
Defendants-Appellants.
 No. 88-2827.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1989.
Decided Jan. 5, 1990.
 
 Before HUG, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Wade Blacksmith brought a civil rights action under 28 U.S.C. § 1983 alleging violations of his first, fourth, fifth, eighth and fourteenth amendment rights, as well as a number of pendent state law claims, against three deputy sheriffs of Sierra County California. The action arose out of various incidents involved in Blacksmith's arrest and detention on June 2, 1986 for possession of illegal weapons. The defendants moved for summary judgment on the ground of qualified immunity. The district court denied the motion. Defendants appeal.
 
 
 3
 We have jurisdiction over this interlocutory appeal under the rule of Mitchell v. Forsyth, 472 U.S. 511 (1985). We affirm the orders of the district court.
 
 SUMMARY JUDGMENT
 
 4
 The defendants contend that the district court improperly imposed upon them the burden of establishing immunity. Immunity, however, is an affirmative defense. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). It is true that, to overcome immunity, a plaintiff must show that his right which was violated was clearly established. Davis v. Scherer, 468 U.S. 183, 197 n(1984). The district court did not violate that principle. In the summary judgment context, the district court did no more than require the defendants, as moving parties, to establish that no genuine issue of material fact existed and that they were entitled to judgment as a matter of law. Our precedent and the Rules of Civil Procedure so require. E.g., Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir.1987); Fed.R.Civ.P. 56(c).
 
 
 5
 We review the district court's ruling on summary judgment de novo, and we view the facts in the record in the light most favorable to the nonmoving party, Blacksmith. Kraus v. County of Pierce, 793 F.2d 1105, 1110 (9th Cir.1986), cert. denied, 480 U.S. 932 (1987).
 
 
 6
 To determine whether defendants' claim of qualified immunity should have been sustained, we first determine whether the complaint alleges a "plain violation of law which has a settled substantive content." Id. at 1108. If so, it is incumbent upon defendants seeking immunity to present, by affidavit or otherwise, facts showing that they committed no such violation. If they make that showing, they are entitled to immunity unless the plaintiff counters with evidence raising a genuine issue of material fact. See id.
 
 
 7
 In this case, Blacksmith alleged two possible violations of settled law: an unlawful arrest and seizure without warrant or probable cause, and an unlawful use of excessive force in violation of due process of law. Defendants countered with affidavits purporting to show that they are entitled to immunity, and Blacksmith responded with his own declaration. For reasons we now set forth, we conclude that the district court did not err in denying the summary judgment with regard to both major claims.
 
 ARREST AND SEIZURE
 
 8
 Whether an arrest without probable cause defeats qualified immunity depends on the underlying factual situation.[1] We describe the facts as set forth in the declaration of Blacksmith, the nonmoving party.
 
 
 9
 Blacksmith and his wife were camping on public land. At approximately 2:00 p.m. on June 2, 1986, defendant Moseley drove up to Blacksmith's campsite at a time when Blacksmith was showing two of his guns to a game warden. Moseley looked at the weapons and stated that in his opinion they were illegal. Blacksmith told Moseley that the guns were legal, and that he had purchased them over the counter in Nevada. Blacksmith permitted Moseley to inspect the weapons, and showed him a receipt for their purchase. Moseley made a note of the serial numbers, makes and models of the weapons. Moseley left without confiscating the weapons or arresting Blacksmith.
 
 
 10
 Some five hours later, Moseley returned, accompanied by defendant Greenwood. At that time, they informed Blacksmith that his weapons were illegal under the California Penal Code. California Penal Code § 102020(1)(d) prohibits "sawed-off shotguns," defined to include rifles with barrels less than 16 inches long or with an overall length of less than 26 inches. Blacksmith again asserted that the weapons were legal. One of the deputies then told Blacksmith that they would confiscate the weapons and issue him a citation. Blacksmith declined to surrender the weapons, whereupon he was arrested and the weapons seized. The weapons were later determined to be legal and were returned to Blacksmith upon his release from custody.
 
 
 11
 For purposes of defendants' immunity, the issue is "whether a reasonable officer would have believed that there was probable cause to effect the seizure." Kraus, 793 F.2d at 1109. Probable cause may arise from innocent behaviour; the issue is whether, on the totality of circumstances, there was "a probability or substantial chance of criminal activity." Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983).
 
 
 12
 Defendants contend that Blacksmith's guns appeared to be sawed-off rifles, rather than the lawful pistols that they were ultimately determined to be. It is undisputed that the guns had barrels of less than 16 inches, and were of an overall length of less than 26 inches, and that defendant Greenwood measured them. The only direct evidence of the appearance of the weapons is found in the declaration of defendant Moseley, who stated that "[t]he weapons appeared to be a (sic) sawed-off M-1 carbine," and that one weapon "appeared to have a cut down pistol grip." He further stated that "[i]t was hard to tell whether they were commercially made or hand made. One appeared to be a cut down rifle."
 
 
 13
 There is no dispute, however, that in fact the weapons were pistols, of a known make and manufacture. Whatever uncertainty defendant Moseley might have had concerning the nature of the weapons at 2:00 p.m. could easily have been resolved in the five hours following, during which time Moseley had knowledge of the makes, model numbers, and serial numbers of the weapons. According to Blacksmith's declaration, which we must accept for purposes of summary judgment, Moseley also had been shown the purchase receipt. For all that appears, a telephone call or two could have settled the matter.
 
 
 14
 We conclude that reasonable officers, having for some five hours the information that defendants had available to them, would have known that to return, without further inquiry, to the campsite where Blacksmith still remained and arrest Blacksmith and seize his weapons, would violate Blacksmith's clearly established constitutional rights. The arrest and seizure could not reasonably be thought lawful "in light of clearly established law and the information the [arresting] officers possessed." Anderson v. Creighton, 107 S.Ct. 3034, 3040 (1987) (emphasis added).
 
 
 15
 We therefore affirm the district court's denial of the motion for summary judgment based on qualified immunity with regard to the arrest and seizure.[2]
 
 EXCESSIVE FORCE
 
 16
 When Blacksmith refused to submit to arrest, a scuffle ensued. The defendants in their affidavits assert that Blacksmith aggressively resisted arrest, and that he called on his wife to release a large dog to attack the defendants, and to shoot them. They were accordingly required to use force to subdue him and effect the arrest.
 
 
 17
 Defendants also assert that when they took Blacksmith to the substation, he was handcuffed to a chair, but was moving around the room and making violent and threatening statements to the deputies, as well as spitting and kicking at them. Defendants attempted to move him and his chair fell over. He then appeared to have an epileptic fit, and the deputies called an ambulance.
 
 
 18
 We do not dispute that these facts, if accepted by a trier of fact, would entitle defendants to qualified immunity, as they so strenuously contend. They are not entitled to summary judgment on the excessive force claim, however, because Blacksmith's affidavit presents an entirely different story concerning the central facts.
 
 
 19
 Blacksmith asserts that he "passively" resisted arrest by grabbing his own legs, that the deputies continually waived and activated a stun gun in his face after being warned that it would cause an epileptic fit on Blacksmith's part if it were used on him. He asserts that after he was taken to the substation and handcuffed to a chair, he was talking to his wife when the defendants objected. Blacksmith asserted the he was entitled to talk to his wife, whereupon one of the defendants grabbed him by the throat and lifted him off the ground while he was still handcuffed to the chair. The defendant then forced Blacksmith backwards over a desk and continued to choke him. After his wife left, Blacksmith further asserts, the defendants again choked him, bent him backwards over his chair, injuring his back, until Blacksmith feigned an epileptic fit.
 
 
 20
 These assertions, if accepted by a trier of fact, would defeat defendants' claim of immunity. Government actions which "offend the canons of decency and fairness" violate the due process protection of the Constitution. Rochin v. California, 342 U.S. 165, 169 (1952). Violent physical abuse of an arrestee or prisoner by police or prison guards constitutes such a violation. Rutherford v. City of Berkeley, 780 F.2d 780 F.2d 1444, 1446 (9th Cir.1986); Meredith v. Arizona, 523 F.2d 481 (9th Cir.1975). Those principles are well established. If Blacksmith's version of the facts is true, reasonable officers would have known that they violated established law.
 
 
 21
 Defendants' entitlement to qualified immunity from the claim of excessive force depends, therefore, on whether the trier of facts accepts defendants' version of the facts or Blacksmith's. The dispute is clearly genuine, and the facts are material, indeed, central to the due process claim. The district court was accordingly quite correct in denying defendants' motion for summary judgment on the excessive force claim.
 
 
 22
 Defendants contend that Blacksmith's version ought not to be accepted because it is implausible, and because there is no affidavit from Blacksmith's wife. There is nothing inherently or logically implausible in Blacksmith's account, however. By believing Blacksmith, "reasonable jurors could find by a preponderance of the evidence that plaintiff was entitled to a verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Whether Blacksmith's version, not inherently implausible, is to be credited over defendants' version of the facts is for the trier of fact, not for the district court or this court on motion for summary judgment.
 
 FIRST AND EIGHTH AMENDMENT
 
 23
 Blacksmith argues that the brutality described above violated his first amendment right to free speech, and his eighth amendment rights against cruel and unusual punishment. These claims, to the extent that they have any merit, present no substantial addition to the alleged due process violation in which they should be subsumed[3].
 
 CONCLUSION
 
 24
 The defendants also argue that the district court should have granted summary judgment on the merits of the pendent state claims. Our interlocutory review under Mitchell v. Forsyth, 472 U.S. 511 (1985), is limited to the claims of qualified immunity that defendants asserted and that we discussed above. White by White v. Pierce County, 797 F.2d 812, 814 (9th Cir.1987).
 
 
 25
 We affirm the district court's orders denying summary judgment on grounds of qualified immunity. The case is remanded to the district court for further proceedings.
 
 
 26
 AFFIRMED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The plaintiff cannot avoid qualified immunity by pleading violations at so abstract a level that they appear to be settled matters of law. Anderson v. Creighton, 483 U.S. 635, ---, 107 S.Ct. 3034, 3038-39 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right". Id. at 3039
 
 
 [2]
 For purposes of the qualified immunity question, we do not differentiate between Blacksmith's fourth amendment claim of unlawful seizure of the weapons and his fourteenth amendment claim for unlawful temporary "taking" of the weapons
 
 
 [3]
 The protections of the eighth amendment against cruel and unusual punishment do not apply prior to conviction, and any punishment directed at a person prior to conviction is a violation of due process. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979), citing United States v. Lovett, 328 U.S. 303, 317-18 (1946)