**<u>NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000260
20-APR-2023
07:54 AM
Dkt. 45 SO**

NO. CAAP-22-0000260

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
DYLAN RIVER JAMES, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CPC-20-0000051)

<u>SUMMARY DISPOSITION ORDER</u>
(By: Hiraoka, Presiding Judge, Nakasone and Chan, JJ.)

Plaintiff-Appellant State of Hawaiʻi (**State**) appeals from the March 28, 2022 Findings of Fact, Conclusions of Law and Order (**FOFs/COLs**) Granting Motion to Suppress Text Messages (**Order Granting Motion to Suppress**); and the April 4, 2022 Order Denying State's Motion to Reconsider Ruling on Motion to Suppress Text Messages (**Order Denying Reconsideration**),[1] both

---

[1] We do not have appellate jurisdiction over the Order Denying Reconsideration, and thus do not address the State's fifth point of error regarding this order. The appeal is from a pre-trial suppression order under Hawaii Revised Statutes (**HRS**) § 641-13(7). In civil cases, a notice of appeal is "deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order." Hawaiʻi Rules of

filed by the Circuit Court of the Fifth Circuit (**Circuit Court**).[2] In the underlying case, Defendant-Appellee Dylan River James (**James**) was charged with five counts of first-degree sexual assault against the complainant (**CW**) that occurred on July 2, 2015.

This appeal concerns the suppression of text messages that were exchanged between James and CW, in which James made admissions that he had sex with CW.  On appeal, the State contends that the Circuit Court:  (1) erred by finding in FOF 7 that CW, "induced [James] via text message to admit that he had sexually assaulted her"; (2) that "[e]ven assuming that [CW] was in effect a government agent when she texted [James],"[3] erred by concluding in COL 4 that the detectives violated James's <u>Miranda</u> rights where James was "not in police custody"; and (3) erred by ultimately granting the suppression of the text messages.[4]

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we resolve the points of error as follows, and affirm.

---

Appellate Procedure (**HRAP**) Rule 4(a)(3).  There is no similar provision deeming the inclusion of all post-judgment motions for a notice of appeal in a criminal case, under HRAP Rule 4(b) (pertaining to "Appeals in criminal cases").  Thus, this court does not have jurisdiction over the Order Denying Reconsideration and has appellate jurisdiction under HRS § 641-13(7) over the Order Granting Motion to Suppress, only.

[2]     The Honorable Randal G.B. Valenciano presided.

[3]     On appeal, the State does not challenge the Circuit Court's determination that CW was acting as a "government agent" under the direction of the detectives.

[4]     The State's points of error (**POE**) do not comply with HRAP Rule 28(b)(4), which requires that the POEs be set forth in "separately <u>numbered</u> paragraphs."  (Emphasis added).  We have numbered POEs A, B, and D, as POEs 1, 2 and 4, and we address these three POEs out of the five POEs raised.  In light of our resolution <u>infra</u>, it is not necessary to address POE 3, which deals with whether James's right to counsel was violated.  We also do not address POE 5 because we lack jurisdiction over the Order Denying Reconsideration.

On December 21, 2021, James filed a Motion to Suppress Text Messages (**Motion to Suppress**) requesting that the July 2, 2015[5] text messages between James and CW be suppressed on grounds that CW, as a government agent, violated James's right to privacy and "induce[d]" James to respond, and that the detectives were required to obtain a waiver of those rights prior to CW contacting James.  James attached the following exhibits to the Motion to Suppress:  (1) a partial transcript of the detectives' July 2, 2015 interview of CW; (2) July 2, 2015 text messages between CW and James; and (3) a partial transcript of CW's testimony at the March 11, 2020 grand jury proceeding.

On February 4, 2022, the State filed its opposition to the Motion to Suppress (**Opposition**), in which it argued, *inter alia*, that even if CW was a government agent, James was not "subjected to a search and seizure, nor a custodial interrogation," and there was no "active deception or attempt to circumvent [James]'s rights."

At the February 24, 2022 hearing on the Motion to Suppress, no witnesses were called to testify.  While the exhibits attached to the Motion to Suppress were not entered into evidence at the hearing, it is undisputed that the Circuit Court considered the exhibits as constituting the evidentiary record for the motion, and the parties do not contend otherwise.[6]  This record reflects the following.

---

[5]    July 2, 2015 is also the date of the charged offenses.

[6]    At the February 24, 2022 hearing on the Motion to Suppress, the Circuit Court indicated that it had reviewed the motion and the attached exhibits.  The FOFs/COLs refer to statements in these exhibits, i.e. FOFs 4-6 (restating CW's and the detectives' statements in the July 2, 2015 interview transcript); FOF 7 (referring to the July 2, 2015 text messages between CW and James); and FOF 8 (quoting CW's testimony from the March 11, 2020 grand jury transcript).

On July 2, 2015, Kauaʻi Police Department detectives Ray M. Takekawa (**Detective Takekawa**) and Darren Rose (**Detective Rose**) (collectively, **Detectives**) interviewed CW, who alleged that James had sexually assaulted her. That same day, CW also had an exam done by a nurse. After the interview, the Detectives instructed CW to contact James, and CW asked the Detectives, "So, like, first I should just, like, get him to admit that we, like, had sex and then after that be, like, well, I was like – [sic]." CW attempted to call James twice, but James did not pick up. Detective Takekawa stated: "You want to try a text?" Detective Rose stated: "Give it a few minutes, about five minutes, and we'll try one more time." CW testified before the grand jury that at the "direction of Detective Takekawa," she texted James, and that "the detective told me just to try to get some sort of comment – comment on what had happened out of him, so I texted him that I was thinking about the night before." The following text messages were exchanged between CW and James:[7]

> [CW:] Sup,[8] just thinking about the other night haha.

> [James:] Lol,[9] that was fun [(winking face emoji)[10]]

---

[7] The text messages are quoted verbatim with footnotes throughout to clarify terms, abbreviations, and symbols used, as may be necessary.

[8] "Sup" is an "informal greeting equivalent to 'What's up?'" Sup, Merriam-Webster, https://www.merriam-webster.com/dictionary/sup (last visited Apr. 6, 2023).

[9] "Lol" is an abbreviation for "laugh out loud." LOL, Merriam-Webster, https://www.merriam-webster.com/dictionary/LOL/ (last visited Mar. 24, 2023).

[10] "Emoji" is defined as "various small images, symbols, or icons used in text fields in electronic communication . . . to express the emotional attitude of the writer, convey information succinctly, [or] communicate a message playfully without using words[.]" Emoji, Merriam-Webster, https://www.merriam-webster.com/dictionary/emoji (last visited Mar. 24, 2023). Each emoji has a different meaning and can be found at the following site. freeCodeCamp, https://www.freecodecamp.org/news/all-emojis-emoji-list-for-copy-and-paste/ (last visited Mar. 23, 2023).

[CW:] Haha what part, the bonfire? Lol

[James:] Yeah, that too

And the skinny dippin [sic]

And something else crazy happened, tryin [sic] to remember wat [sic] it was...

[CW:] Hahahah hmmm... Seems like there were two other things... Got a little rough [(winking face emoji)] does that ring a bell?

[James:] Hmmm its kind of coming back to me... I do remember it being very rough [(smirking face emoji)]

[CW:] Tell me your favorite part

[James:] How bout [sic] I show you some time soon [(winking emoji)]

[CW:] Hahaha not too soon though, I'm still sore lol

Just tell me your favorite part in the mean time to tide me over [(winking face with tongue emoji)]

[James:] Sore!? That was just a warm up!

And it was that you did what I told you to do... What was yours?

[CW:] The semi public locations haha. Never done that in a hamock [sic] before lol. I mean mostly sore from the part where I was screaming and trying to crawl away... You really don't take no for an answer lol. So idk[11] I feel kinda wierd [sic] about that part.

[James:] Woah! I couldnt [sic] tell if you were serious or no [sic] to be honest... Thought it was some kind of 'role playin' or something? Sorry about that, i [sic] was a lil[12] confused about that as well [(flushed face emoji)]

Not*

[CW:] Wait during which part?

[James:] When you were screaming and crawling away by the lifeguard tower... Couldnt [sic] tell if you were serious

---

[11] "Idk" is an abbreviation for "I don't know." Idk, Merriam-Webster, https://www.merriam-webster.com/dictionary/IDK/ (last visited Mar. 23, 2023).

[12] "Lil" is an abbreviation of the word "little." Lil, Dictionary.com, https://www.dictionary.com/e/slang/lil/ (last visited Mar. 23, 2023).

or wat [sic] was goin.[13] [sic] I was pretty confused... And sorry to put you in that situation, wasnt [sic] my intention at the time [(flushed face emoji)]

(Footnotes added).

At the conclusion of the hearing, the Circuit Court orally ruled that CW was acting as a "government agent" and that James's rights were violated:

> So in this case the Court finds that the police actively recruited the complaining witness. The Court also finds that the police directed the complaining witness. And part of the reason for that is they were telling her what to do, including when the phone -- when phone calls weren't answered, why don't you send a text and that type of detailed direction. The complaining witness didn't receive payment for services.
>
> So when you look at the factors, the three remaining factors from Boynton -- because I'm taking out the motivation factor pursuant to the cases that the Court read -- the Court finds that the complaining witness was acting as a government agent. And so because the complaining witness was acting as a government agent, then there were a violation of the rights of Mr. James.
>
> And so the Court is going to grant the motion to suppress text messages.

On March 28, 2022, the Circuit Court filed its FOFs/COLs, in which the Circuit Court made the following pertinent FOFs and COLs:

> FINDINGS OF FACT
>
> 1. The incident in this case is alleged to have occurred on July 2, 2015.
>
> 2. On July 2, 2015, commencing at 5:55 p.m., Kauai Police Department Detective Ray M. Takekawa and Detective Darren Rose conducted an interview of the [CW].
>
> 3. At the conclusion of the interview, Detective Takekawa and Detective Rose directed CW to contact [James] and to discuss the incident upon which this case is based with him.

---

[13] "Goin" is an abbreviation for the word "going." Goin, NoSlang.com, https://www.noslang.com/search/goin (last visited Mar. 23, 2023).

4. In the transcript of a recording designated "[CW] Pretext," CW is recorded as stating, "Wait. So, like, first I should just, like, get him to admit that we, like, had sex and then after that be, like, well, I was like –"

5. James did not answer CW's first call. In the transcript of a recording designated "[CW] Pretext Call 2," CW calls [James]'s phone and when the voicemail comes on CW asks the detectives, "Do I leave a message?" Detective Takekawa responded, "You want to try a text?" and Detective Rose adds, "Give it a few minutes, about five minutes, and we'll try one more time."

6. In the transcript of a recording designated as "[CW] Pretext 2," CW makes another call to James and the voicemail again comes on.

7. Subsequently CW contacted [James] via text message. Pursuant to the detectives' directions when she attempted to call [James], CW induced [James] to acknowledge that they had sex and that it was "rough" as well as other statements about the incident.

8. At the Grand Jury CW was asked by the deputy prosecuting attorney "And after the incident, did you text message [James]?" CW responded "Yes, at the direction of Detective Takikawa [sic]." CW then went on to state "Well, the detective told me just to try to get some sort of comment – comment on what had happened out of him, so I texted him that I was thinking about the night before."

CONCLUSIONS OF LAW

. . . .

3. Under the totality of the circumstances, the governmental involvement in this case was significant and extensive enough to render CW an instrumentality of the State, i.e. a government agent, when she called and texted [James]. Kahoonei, 83 Hawaiʻi at 132, 925 P.2d at 302. In particular, CW was actively recruited by the detectives to call and then text [James]. Further, CW was directed by the detectives to text [James] and to induce him to discuss the incident. After CW was unable to reach [James] via a phone call, the detectives asked CW if she wanted to text [James]. The detectives then told CW to induce James to admit that they had sex. CW did not receive compensation from the detectives.

4. At the point when CW called and texted [James], he was the only suspect and the investigation had focused on him. If the detectives had sought to question [James] at that point they would have been required to advise him of his rights, including his right to remain silent and his right to an attorney, and obtain a waiver of those right [sic] prior to proceeding with the questioning. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966); State v. Santiago, 53 Haw. 254, 266, 492 P.2d 657, 665 (1971).

5. As CW was acting as a government agent when she called and texted [James], the actions of the detectives violated James['s] right to an attorney under the Sixth amendment to the U.S. Constitution and article I, section 14 of the Hawaiʻi Constitution and [James]'s right to remain silent under the Fifth Amendment and article I, section 10.

6. Due the violation of [James]'s rights under both the U.S. and Hawaiʻi constitutions, [James]'s statements are inadmissible in the instant case. State v. Eli, 126 Hawaiʻi 510, 521, 273 P.3d 1196, 1207 (2012).

This appeal followed.

**(1)** The State argues that the finding in FOF 7, that "CW induced [James] to acknowledge they had sex" was clearly erroneous because there was no finding or evidence that CW "had power over [James] to induce him to acknowledge, against his free will, that they had sex . . . ."

The State's argument presumes, without support in the record, that the word "induce," as used by the Circuit Court, meant that CW "had power" over James to overcome "his free will[.]" However, "induce" means "to move by persuasion or influence[,] to call forth or bring about by influence or stimulation[.]" Induce, Merriam-Webster, https://www.merriam-webster.com/dictionary/induce (last visited Mar. 24, 2023). "Government inducement" may involve "threats, coercive tactics," and may include "persuasion, fraudulent representations . . . ." United States v. Mack, 53 F.Supp.3d 179, 187 (D.D.C. 2014) (citation omitted).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding.

Birano v. State, 143 Hawaiʻi 163, 181, 426 P.3d 387, 405 (2018) (internal quotation marks and citations omitted). Unchallenged FOFs and COLs are binding. See State v. Rodrigues, 145 Hawaiʻi

487, 494, 454 P.3d 428, 435 (2019) (citation omitted); <u>Kelly v. 1250 Oceanside Partners</u>, 111 Hawai'i 205, 227, 140 P.3d 985, 1007 (2006).

Here, the Detectives "directed CW to contact [James] and to discuss the incident . . . ." FOF 3. In unchallenged COLs 3 and 5, the Circuit Court determined that CW was a government agent. The transcripts of the recordings show that CW also asked for and received direction and clarification from the Detectives about what she was supposed to "get him [(James)] to admit," whether she should leave a message on James's voicemail, whether she should attempt a text message, and whether she should try one more time to call James. FOFs 4-6. Viewing the full context of the Circuit Court's findings in FOFs 3-6, where all of CW's actions to contact James and to obtain an admission from him were orchestrated by the Detectives, there was substantial evidence to support FOF 7's specific finding that when CW "induced" James to admit that they had sex, it was "[p]ursuant to the detectives' directions[.]" Thus, FOF 7 was not clearly erroneous. <u>See Birano</u>, 143 Hawai'i at 181, 426 P.3d at 405.

**(2)** The State argues that COL 4 was wrong because James was not entitled to <u>Miranda</u> warnings prior to CW text messaging James, where James was not "in custody." The State asserts that James cannot be "in custody" when he "was nowhere near" the Detectives physically during the text messaging. The State also urges that the existence of probable cause does not dispositively entitle a suspect to <u>Miranda</u> warnings pursuant to <u>State v. Sagapolutele-Silva</u>, 151 Hawai'i 283, 287, 511 P.3d 782, 786 (2022), recently <u>overruled by</u> <u>State v. Hewitt</u>,

No. SCWC-16-0000460, 2023 WL 2523652 (Mar. 15, 2023).[14]  The
State's argument lacks merit.

"Whether an accused's right against self-incrimination
under the Hawaiʻi constitution was protected through the use of a
*Miranda* warning is a question of constitutional law, which this
court reviews *de novo* under the right/wrong standard."  State v.
Kazanas, 138 Hawaiʻi 23, 33, 375 P.3d 1261, 1271 (2016) (citing
State v. Jenkins, 93 Hawaiʻi 87, 100, 997 P.2d 13, 26 (2000)).

*Miranda* warnings are required when the defendant is
(1) under interrogation and (2) in custody.  State v. Ah Loo,
94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (citation omitted).
In Hewitt, the Hawaiʻi Supreme Court recently held that the
"Ketchum rule remains in effect:  *Miranda* warnings are required
by article I, section 10 of the Constitution of the State of
Hawaiʻi when probable cause to arrest has developed."  2023 WL
2523652, at *10 (citing Ketchum, 97 Hawaiʻi at 126, 34 P.3d at
1025).

> COL 4 provides:
>
> 4.  At the point when CW called and texted [James], he was
> the only suspect and the investigation had focused on him.
> If the detectives had sought to question [James] at that
> point they would have been required to advise him of his
> rights, including his right to remain silent and his right
> to an attorney, and obtain a waiver of those right [sic]
> prior to proceeding with the questioning. . . .

---

[14]     In Sagapolutele-Silva, the Hawaiʻi Supreme Court overruled State
v. Ketchum, 97 Hawaiʻi 107, 34 P.3d 1006 (2001) and held that "the existence
of probable cause [was] relevant, [but was] not dispositive in every case."
151 Hawaiʻi at 291, 511 P.3d at 790.  Rather, the courts were required to
"consider the totality of the circumstances."  Id.  On March 20, 2023, the
State filed a statement of supplemental authority, stating that the supreme
court "overruled" Sagapolutele-Silva in Hewitt, where the supreme court
"reaffirmed the 'bright-line' rule articulated in" Ketchum that Miranda
warnings are required when probable cause to arrest has developed.  2023 WL
2523652, at *10.

The State does not dispute that the text messages constituted "interrogation" under the circumstances of this case. The State does not challenge the factual finding within COL 4 that James "was the only suspect" and the investigation had "focused on him." Thus, at the point the text messages were sent by the Detectives' agent, CW, the Detectives had probable cause to arrest James; and Miranda warnings were required before the Detectives could question James. See Hewitt, 2023 WL 2523652, at *10. Instead, however, the Detectives covertly engaged in an un-Mirandized interrogation of James, by having CW send suggestive text messages to James, using her personal mobile device to elicit intimate details of the incident.

The State's position that the text messages should not be suppressed because James received the text messages through CW rather than law enforcement is inconsistent with the purposes of Hawaiʻi's exclusionary rule: "(1) judicial integrity, (2) the protection of individual privacy, and (3) deterrence of illegal police misconduct." State v. McKnight, 131 Hawaiʻi 379, 398, 319 P.3d 298, 317 (2013) (citation omitted). Allowing the circumvention of Miranda warnings by permitting law enforcement to engage in the ***undercover interrogation*** of suspects by directing the sending of, and dictating the content of, text messages using a government agent's personal mobile device does not preserve judicial integrity, protect individual privacy, and deter illegal police misconduct. See id.

We conclude that the Circuit Court was not wrong in COL 4 that James's constitutional rights were violated when, after he was the focus of the investigation, he was interrogated through text messages sent by CW, a government agent, without Miranda warnings. See Kazanas, 138 Hawaiʻi at 33, 375 P.3d at 1271.

**(3)** In light of our disposition, the Circuit Court's suppression of the text messages as inadmissible evidence for trial was also not erroneous. See id.

For the foregoing reasons, we affirm the March 28, 2022 Findings of Fact, Conclusions of Law and Order Granting Motion to Suppress Text Messages, filed by the Circuit Court of the Fifth Circuit.

DATED: Honolulu, Hawaiʻi, April 20, 2023.

On the briefs:

Tracy Murakami,
Deputy Prosecuting Attorney
for Plaintiff-Appellant.

David M. Hayakawa,
for Defendant-Appellee.

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Derrick H.M. Chan
Associate Judge

12